HIPPLER, Respondent, vs. QUANDT, Appellant.

*February 2—February 21, 1911.*

*Malicious prosecution: Good faith: Advice of counsel: Evidence: Instructions to jury.*

1. In an action for malicious prosecution the evidence is *held* to sustain a verdict to the effect that defendant did not make a full, fair, and impartial statement to the district attorney of all the facts within his knowledge relative to the offense charged, and act honestly and in good faith upon the advice of such attorney.
2. Refusal of the trial court to give requested instructions is not error when the general charge was full and complete and as favorable to the party making such request as the law permitted.

APPEAL from a judgment of the circuit court for Waupaca county: CHAS. M. WEBB, Circuit Judge. *Affirmed.*

Action for malicious prosecution of the plaintiff by the defendant on the criminal charge of embezzlement. The trial resulted in a verdict for the plaintiff, and from judgment thereon defendant appealed.

The cause was submitted for the appellant on the brief of *F. F. Wheeler* and *Wm. N. Martin,* and for the respondent on that of *Browne, Browne & Fisher.*

VINJE, J.   As only two of the twelve assignments of error are argued in appellant's brief, they alone will be considered. It is claimed the evidence shows the defendant made a full, fair, and impartial statement to the district attorney of all the facts and circumstances known to him relative to the offense charged against plaintiff, and that upon the statement so made he was advised by the district attorney that plaintiff was guilty of the offense charged, and that he acted honestly and in good faith upon such advice.   If this were so it would constitute a complete defense to the action, and the trial court so instructed the jury.   There was, however, a conflict of evidence as to whether or not the defendant fairly stated

to the district attorney all the facts within his knowledge. The evidentiary facts relating to this issue are quite voluminous and it is deemed unnecessary to set them out in detail. Only a few of them will be briefly mentioned.

It seems undisputed that from April 1 to August 1, 1907, the defendant owned and conducted a hotel at Waupaca; that he hired plaintiff as clerk and manager with full power to collect and disburse money, hire and discharge help and pay the same, including himself; that on August 1st defendant sold his hotel, and upon a settlement with plaintiff it was found that the latter owed him about $50. Late in September defendant and his brother-in-law purchased the Fuller House at Rhinelander, and plaintiff was hired to work for the new firm and did so from about the 23d of that month until about the 4th of November following, at $40 per month. At that time he quit his employment and had then drawn $47 on account of wages, of which $15 was admitted to have been drawn with the consent of the defendant. He contended that his agreement with the plaintiff was that the latter should apply no moneys received on his wages without the express consent of himself or his wife until the sum of $50 was fully repaid. This plaintiff denied and claimed all the agreement he had with the defendant was that he should work for the firm on the same terms and under the same arrangement he had worked for the defendant at Waupaca; that there it was his custom, sanctioned by the defendant, to draw money from time to time and apply it on his wages, and that nothing was said about his not doing so until the $50 was repaid.

The defendant admits that he did not tell the district attorney anything about the way he had conducted the business with plaintiff at Waupaca. The district attorney testified that the defendant told him plaintiff had worked for him at Waupaca in the hotel business; that when he closed out plaintiff owed him a balance of $50, and he had consented to come to Rhinelander to work, and it was agreed between them that

plaintiff was to draw no money or anything from the business at Rhinelander, but was to turn in his wages in payment of the $50; that he had, nevertheless, in defendant's absence, drawn money and gone away; that upon this statement he advised the defendant that he thought plaintiff was guilty of embezzlement.

It will be seen from this summary of the testimony that the jury might well believe the agreement between plaintiff and defendant was that the former should work for the firm under the same conditions he had worked at Waupaca, which included permission to apply money on his own wages, and that the defendant had withheld such fact from the district attorney. The belief that defendant did not make a full, fair, and impartial statement to counsel and act honestly thereupon was no doubt strengthened by the fact that he admitted ulterior motives in making the arrest. He testified: "I wanted him to explain the books and pay me what he owed me or make arrangements to do so. I wanted to learn him a lesson not to get in that shape again and to get him to look the books over for me and pay me what he owed me or tell me when he would pay me."

The defendant excepted to the refusal of the court to give these instructions:

"You are not trying, in this case, the innocence or guilt of the plaintiff, as to whether he embezzled the sum of thirty-two dollars of the moneys of Quandt & Kelley, but whether the defendant in swearing out the warrant acted in good faith on evidence, whether true or false, which was sufficient to create in his mind a reasonable belief that the plaintiff was guilty of the offense, and if you so find, you should find for the defendant."

"The discharge of the plaintiff in the criminal action before Judge WALKER, as shown in this case, is not evidence of malice or want of probable cause."

The charge covers twelve printed pages and cannot be set out *in extenso*. It clearly pointed out, however, that the bur-

den rested upon the plaintiff to establish want of probable cause and malice, defined both correctly, instructed the jury as to the defense of advice of counsel, called their attention to the fact that many criminal prosecutions may be instituted in good faith and yet end in naught; that only the facts and circumstances known to the defendant at the time of the prosecution or those of which he had sufficient notice to put him upon inquiry were material; that the facts and circumstances afterwards discovered could have no bearing upon the question of want of probable cause; and that prosecutions were often, from the necessity of the case, properly instituted hastily and without opportunity to make full and complete investigation. Indeed, the charge was full and complete and as favorable to the defendant as the law permitted. He is in no position to allege error by reason of the refusal of the trial court to give the requested instructions.

*By the Court.*—Judgment affirmed.